UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LORENA ZABALA,    No. 2:07-CV-00823-MCE-DAD

    Plaintiff,

  v.    <u>ORDER</u>

WALGREEN COMPANY,

    Defendant.

----oo0oo----

Plaintiff, Lorena Zabala, filed the current action against Defendant, Walgreen Company, alleging causes of action for Employment Discrimination, Breach of Contract, and Termination in Violation of Public Policy. Presently before the Court are Defendant's Motion for Summary Judgment and Motion for Sanctions. These matters came on for oral argument on August 22, 2008. Michelle Jenni appeared on behalf of Plaintiff Lorena Zabala. Rex Berry and Scott Plamondon appeared on behalf of Defendant Walgreen. The Court heard oral argument from the parties and took the matter under submission.

///

1

**BACKGROUND**[1]

Defendant is a retailer operating stores throughout California. As an employment incentive, an employee's immediate family members who reside in the same household as the employee are permitted to receive merchandise discounts. Cashiers are responsible for verifying that individuals requesting the discount are qualified to receive it.

Defendant hired Plaintiff, a Filipino woman, on July 16, 1996, in the position of Senior Beauty Advisor, and one of her job functions was to operate a cash register. On March 9, 2005, Defendant learned that Plaintiff had given the family discount to the aunt and uncle of a co-worker, Nathan Smith, a white male, at his behest. Plaintiff never questioned those individuals, as required by company policy, to confirm that they actually qualified for the discount and instead relied only on the assertions of her co-worker that the individuals were his family. According to Defendant, Mr. Smith's relatives were not "immediate family" and, therefore, Plaintiff violated company policy by giving them the discount.

///
///
///

---

[1] Unless otherwise specified, the following recitation of relevant facts is derived from Plaintiff's Response to Defendant's Separate Statement of Undisputed Facts. The Court notes Defendant's various objections to Plaintiff's evidence. However, because the Court did not rely on that evidence in reaching its decision, the Court will not address those arguments.

1    Plaintiff was suspended during an investigation, and
2 eventually terminated.  Mr. Smith was not terminated.  The store
3 manager at the time, Rachel Pardee, claims that she did not
4 consider Plaintiff's race when she terminated Plaintiff's
5 employment.  Declaration of Rachel Pardee ("Pardee Decl."), ¶ 11.
6 Additionally, Ms. Pardee contends that she terminated Plaintiff
7 solely for violating Defendant's policy and that Mr. Smith was
8 not terminated because he did not give any unauthorized
9 discounts.  Id. at 13-14.

10    Plaintiff admits that, during her employment with Defendant,
11 she never experienced any discrimination, nor did she make any
12 complaints of discrimination.  Additionally, in her deposition,
13 Plaintiff testified that she had no reason to believe that the
14 fact that she is Filipino had anything to do with Defendant's
15 decision to terminate her employment.  She simply believed that
16 race must have been the reason for her termination because
17 Defendant did not also fire Mr. Smith.  Deposition of Lorena
18 Zabala ("Zabala Depo."), 93:3-25.

19    Plaintiff never received a written employment contract from
20 Defendant and admits that she was not guaranteed employment with
21 Defendant.  Plaintiff also admits that she was never told that
22 her employment could only be terminated for good cause.
23 Additionally, prior to her employment, Plaintiff signed an
24 employment application acknowledging:
25 ///
26 ///
27 ///
28 ///

3

>In making this application for employment, and if hired, I hereby understand, certify and state...that my employment with Walgreens is for no definite period and may be terminated at any time, with or without cause, and without any previous notice, at the option of Walgreens or me.  I further understand that no employee, manager or other agent or representative of Walgreens, other than its Chief Executive Officer, has any authority to enter into any agreement or amendment contrary to the foregoing.

Nevertheless, Plaintiff contends that, because Defendant employed a progressive discipline plan, an implied-in-fact contract under which Plaintiff could only be terminated for good cause was created, and thereafter governed the parties' relationship.

Based on the above facts, Plaintiff claims she was unlawfully discriminated against based on her race and/or gender and that her termination resulted in a breach of the alleged implied-in-fact employment agreement.  Defendant now moves for summary judgment and sanctions.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

///

4

1  Rule 56 also allows a court to grant summary adjudication on
2 part of a claim or defense.  See Fed. R. Civ. P. 56(a) ("A party
3 seeking to recover upon a claim ... may ... move ... for a
4 summary judgment in the party's favor upon all or any part
5 thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp.
6 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter
7 Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

8  The standard that applies to a motion for summary
9 adjudication is the same as that which applies to a motion for
10 summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v.
11 ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> A party seeking summary judgment always bears the
> initial responsibility of informing the district court
> of the basis for its motion, and identifying those
> portions of 'the pleadings, depositions, answers to
> interrogatories, and admissions on file together with
> the affidavits, if any,' which it believes demonstrate
> the absence of a genuine issue of material fact.

16 Celotex Corp. v. Catrett, 477 U.S. at 323(quoting Rule 56(c)).

17  If the moving party meets its initial responsibility, the
18 burden then shifts to the opposing party to establish that a
19 genuine issue as to any material fact actually does exist.
20 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
21 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
22 253, 288-89 (1968).

23  In attempting to establish the existence of this factual
24 dispute, the opposing party must tender evidence of specific
25 facts in the form of affidavits, and/or admissible discovery
26 material, in support of its contention that the dispute exists.
27 Fed. R. Civ. P. 56(e).
28 ///

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Schuylkill and Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.

///

Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**I.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS GRANTED**

    **A.  Employment Discrimination**

In her First Cause of Action, Plaintiff alleges Defendant violated the California Fair Employment and Housing Act, Government Code § 12900 et seq. ("FEHA").  Plaintiff specifically complains that Defendant violated Government Code § 12940, which provides:

> It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
>
> (a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation of any person, to refuse to hire or employ the person,...or to discharge the person from employment..., or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

Plaintiff claims that Defendant discriminated against her on the basis of her gender and race.[2]

The California Supreme Court has articulated the standard to be applied in evaluating employment discrimination cases as follows:

---

[2] While Plaintiff originally alleged to have been discriminated against based on her age, she has clarified in her Opposition to Defendant's Motion that she does not now bring such a claim.

7

Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying [California's] own statutes.  In particular, California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination...based on a theory of disparate treatment.

This so-called <u>McDonnell Douglas</u> test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially.  Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained.

At trial, the <u>McDonnell Douglas</u> test places on the plaintiff the initial burden to establish a *prima facie* case of discrimination.  This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled.  While the plaintiff's *prima facie* burden is not onerous, he must at least show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a [prohibited] discriminatory criterion.

The specific elements of a *prima facie* case may vary depending on the particular facts.  Generally, the plaintiff must provide evidence (1) that he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

If, at trial, the plaintiff establishes a *prima facie* case, a presumption of discrimination arises.  This presumption, though rebuttable, is legally mandatory.  Thus, in a trial, if the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

///

///

8

1
2
3
4
    Accordingly, at this trial stage, the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to raise a genuine issue of fact and to justify a judgment for the [employer], that its action was taken for a legitimate, nondiscriminatory reason.

5
6
7
8
9
    If the employer sustains this burden, the presumption of discrimination disappears. The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive. In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias. The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff.

10 Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354-356 (2000)
11 (internal quotations and citations omitted).

12     Plaintiff has not established a *prima facie* case of
13 discrimination based on her age and/or her gender. Plaintiff
14 emphasizes that "[t]he burden of establishing a prima facie case
15 of disparate treatment is not onerous." Lyons v. England, 307
16 F.3d 1092, 1112 (9th Cir. 2002), quoting Tex. Dept. of Community
17 Affairs v. Burdine, 450 U.S. 248, 253 (1981). "At the summary
18 judgment stage, the 'requisite degree of proof to establish a
19 prima facie case ... is minimal and does not even need to rise to
20 the level of a preponderance of the evidence." Id., quoting
21 Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

22     Nevertheless, in the instant case, Plaintiff has failed to
23 meet even this minimal burden because the record is devoid of any
24 evidence giving rise to an "inference of discriminatory motive."
25 Plaintiff does not deny that she violated Defendant's company
26 policy when she gave an unauthorized family discount to persons
27 who did not qualify for the benefit.
28 ///

1  Plaintiff simply takes the position that Mr. Smith was the more
2  morally culpable actor and that, either she should not have been
3  fired, or he should have been fired as well.
4      That is not the law.  Rather, the FEHA

> "does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. The FEHA addresses discrimination. It is not a shield against harsh treatment at the workplace. Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is whether the given reason was a pretext for illegal discrimination."

Arteaga v. Brink's, Inc., 163 Cal. App. 4th 327, 344 (2d Dist. 2008), quoting Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984) (internal citations and quotations omitted).

    Additionally, even if Plaintiff had met her initial burden, Defendant has shown that Plaintiff's termination was based on a "legitimate, nondiscriminatory reason," her undisputed violation of the company's family-discount policy.  Defendant has shown the existence of its applicable policy and has provided undisputed evidence that Plaintiff violated that policy, resulting in her dismissal.

    Nevertheless, Plaintiff proceeds to argue that Defendant's reliance on that policy was a pretext for its racial and gender-based animus.  Again, however, the only evidence proffered by Plaintiff in this regard is that she was fired and Mr. Smith was not.

Yet, again, Plaintiff does not deny that she violated the company's policy by giving an unauthorized discount. Furthermore, it is undisputed that Mr. Smith did not give such an unauthorized discount. Plaintiff's termination for a legitimate, nondiscriminatory reason, without any additional facts, simply does not support a finding that Defendant acted with any discriminatory motive or relied on its company policy as a pretext to terminate Plaintiff.

Because Plaintiff failed to make a *prima facie* case for discrimination and because, assuming she had made such a case, she failed to establish that Defendant's legitimate, nondiscriminatory reason for terminating her was pretextual, Defendant's Motion for Summary Judgment as to Plaintiff's First Cause of Action is granted.

Additionally, because Plaintiff's Third Cause of Action for Termination in Violation of Public Policy was premised on her above discrimination claims, it must fail as well. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Third Cause of Action is also granted.

**B.   Breach of Contract**

Finally, Plaintiff argues that, despite the absence of an express agreement, during the course of her employment, an implied-in-fact agreement arose under which she could only be terminated by Defendant for good cause. Plaintiff acknowledges that, under California law, the employment relationship is presumed to be "at-will." Cal. Labor Code § 2922.

11

1  Nevertheless, Plaintiff points out that "though Labor Code
2  section 2922 prevails where the employer and employee have
3  reached no other understanding, it does not overcome their
4  'fundamental...freedom of contract' to depart from at-will
5  employment." <u>Guz v. Bechtel Nat'l, Inc.</u>, 24 Cal. 4th 317, 336
6  (2000), quoting <u>Foley v. Interactive Data Corp.</u>, 47 Cal. 3d 654,
7  677 (1988).

8  Even assuming, *arguendo*, that Plaintiff is correct and the
9  parties at some point contracted away from an "at-will"
10 relationship to one in which Plaintiff could only be terminated
11 for cause, such cause exists here. California law defines "good
12 cause" in this context as "fair and honest reasons, regulated by
13 good faith on the part of the employer, that are not trivial,
14 arbitrary or capricious, unrelated to business needs or goals, or
15 pretextual." <u>Cotran v. Rollins Hudig Hall Intern., Inc.</u>, 17 Cal.
16 4th 93, 107-108 (1998).

17 In the instant case, Defendant provided ample uncontested
18 evidence that Plaintiff gave a family-discount to individuals who
19 were not qualified for the benefit. While Plaintiff
20 characterizes her actions as a "mistake" and argues that
21 Mr. Smith was more culpable than she, as discussed above,
22 Defendant's decision was neither arbitrary or pretextual. Thus,
23 there can be no breach. Accordingly, Defendant's Motion for
24 Summary Judgment on Plaintiff's Second Cause of Action is
25 granted.
26 ///
27 ///
28 ///

12

1  **II.   DEFENDANT'S MOTION FOR SANCTIONS**

2

3       Pursuant to Federal Rule of Civil Procedure 11, Defendant
4  asks this Court to impose sanctions upon both Plaintiff and her
5  counsel for the filing of frivolous claims.  Defendant argues
6  that Plaintiff and Plaintiff's counsel were both "personally
7  involved in the preparation and filing of this lawsuit, and
8  ignored (1) the fact that Zabala had no evidence that her
9  termination was the product of racial animus, and (2) the fact
10 that Zabala was not covered by any age discrimination statute."
11 Motion for Sanctions, 4:6-9.

12       This Court is unwilling to impose sanctions in this case.
13 It will be the rare case, indeed, where a Plaintiff litigating
14 discrimination claims has direct evidence of the alleged
15 discriminatory conduct.  Moreover, Plaintiff does not pursue her
16 age discrimination claim here, and the Court does not find the
17 inclusion of that claim in her Complaint worthy of sanctions.
18 Thus, Defendant's Motion for Sanctions is denied.
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

Defendant's Motion for Summary Judgment is GRANTED as to all causes of action and Defendant's Motion for Sanctions is DENIED. The Clerk of the Court is directed to enter judgment in favor of Defendant and close the file.

IT IS SO ORDERED.

Dated: October 29, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE